1

2

3

4                    UNITED STATES DISTRICT COURT

5                   NORTHERN DISTRICT OF CALIFORNIA

6

7    DANIEL GUNTHER, et al.,                 Case No.  13-cv-04596-HSG

          Plaintiffs,
8                                            **ORDER DENYING IN PART AND**
                                             **GRANTING IN PART DEFENDANT'S**
9         v.                                 **MOTION FOR SUMMARY**
                                             **JUDGMENT, OR IN THE**
10   XEROX CORPORATION,                      **ALTERNATIVE, PARTIAL SUMMARY**
                                             **JUDGMENT REGARDING DANIEL**
11        Defendant.                         **GUNTHER**

12                                           Re: Dkt. No. 45

13   **I.    INTRODUCTION**

14        This is an employment discrimination case brought by Plaintiffs Daniel Gunther and

15   Sakeenah McCullough against Defendant Xerox Corporation and various Doe defendants.  Both

16   Plaintiffs assert causes of action for race discrimination, unlawful retaliation, declaratory relief,

17   and wrongful termination under California's Fair Employment and Housing Act, Cal. Gov't Code

18   § 12920, et seq. ("FEHA").  After Plaintiffs filed their First Amended Complaint ("FAC"), Xerox

19   removed the action to this Court.  *See* Dkt. No. 1.[1]  Now before the Court is Defendant's motion

20   for summary judgment as to Daniel Gunther, on which the Court heard oral argument on April 30,

21   2015.  Dkt. No. 45.  After carefully considering the parties' written and oral arguments, the Court

22   hereby DENIES IN PART and GRANTS IN PART Defendant's motion for summary judgment

23

24   _____

[1] Plaintiffs allege unspecified damages for lost wages and benefits, emotional distress, punitive
25   damages, and attorneys' fees and costs.  *See* FAC ¶¶ 61, 71, 88, 97, 106, 115 and Prayer for Relief
     (Ex. A).  The parties are completely diverse, and Plaintiffs do not dispute that the $75,000
26   jurisdictional amount is met.  *See Simmons v. PCR Tech.,* 209 F. Supp. 2d 1029, 1035 (N.D. Cal.
     2002) (denying motion to remand in an employment discrimination case where damages were not
27   specified and finding that "while attorneys' fees alone would not necessarily exceed $75,000,
     when viewed in combination with alleged compensatory, punitive, and emotional distress
28   damages, the jurisdictional minimum is clearly satisfied").

United States District Court
Northern District of California

1    or, in the alternative, partial summary judgment regarding Gunther.

2    **II.    EVIDENTIARY OBJECTIONS AND REQUESTS FOR JUDICIAL NOTICE**

3           Both parties raise objections to the evidence submitted in relation to Defendant's motion.

4    Plaintiff's evidentiary objections fail to comply with Civil Local Rule 7-3(a) because they were

5    not included within his opposition brief.  As a result, the Court OVERRULES Plaintiff's

6    evidentiary objections for failure to comply with the Local Rules.

7           Defendant objects to numerous portions of Plaintiff's brief and underlying evidence.

8    Reply at 4-8.  Defendant's evidentiary objections are not sufficiently specific to enable the Court

9    to properly consider them.  In several instances, Defendant objects to entire paragraphs of

10   Plaintiff's *brief* as opposed to the specific evidence Defendant seeks to exclude, "so it is not

11   possible for the Court to fairly evaluate the objections."  *Schaeffer v. Gregory Vill. Partners*, 2015

12   WL 2267813, at *5 (N.D. Cal. May 14, 2015).  In addition, other than making the blanket

13   assertion that some of Gunther's evidence should be excluded because it is "speculative,

14   argumentative, conclusory," "contain[s] hearsay, or constitute[s] impermissible legal conclusions,"

15   Defendant makes no attempt to specify which statements run afoul of which particular rule of

16   evidence.  *See* Reply at 4-8.  In fact, Defendant's evidentiary objections invite the Court to make

17   factual findings as to what the evidence does or does not show, which is plainly impermissible at

18   the summary judgment stage and is not an appropriate basis for striking evidence.  For example,

19   Defendant objects to the following portion of Plaintiff's brief: "Mr. Conville admitted . . . that he

20   removed the Apple and Lockheed Martin accounts from the territory, specifically moving these

21   accounts away from Daniel because he had concerns about Daniel's 'communication skills.' "

22   Reply at 6 (quoting Opp. at 4).  According to Xerox, this excerpt: (1) "does not contradict the

23   evidence that Conville had legitimate concerns [regarding Gunther's communication skills]," and

24   (2) does not present "genuine disputes of fact warranting trial."  Reply at 6-7.  Neither of

25   Defendant's "objections" raises any legal basis for disregarding evidence.  The Court therefore

26   overrules Defendant's vaguely asserted objections without prejudice to the assertion of proper

27   objections, made to specific statements, at the time of trial or in connection with a future motion.

28

2

III.    **STATEMENT OF FACTS**[2]

Gunther, an African-American man, began his employment at Xerox in April of 1996 as a Sales Representative.[3]  Declaration of Daniel Gunther ("Gunther Decl.") ¶ 2, Dkt. No. 57.  During the course of his employment at Xerox, Gunther contends that he was subject to racial discrimination culminating in his termination.  The relevant facts regarding Gunther's employment, Xerox's alleged discriminatory conduct, and his ultimate termination are briefly described below.

Gunther was a Sales Representative for Xerox for approximately nine years and received some accolades for his performance in that position, including being a "Star Award winner," and being included in the "President's Club" and "Par Club" four times.  *Id.* ¶ 3.  In October or November of 2005, Gunther began performing the functions of a Sales Manager without a commensurate change in title or salary.  *Id.* ¶ 4.  In May of 2006, Michael Donahue, Gunther's boss and a Manager of Sales Operations at Xerox, promoted him to "interim Account Sales Manager."  *Id.* ¶¶ 4-5.  Gunther contends that Donahue, who is white, only promoted him because Larry Thompson, an African-American and Xerox's Senior Vice President for the Western United States at the time, told him to.  Declaration of Elizabeth Riles ("Riles Decl."), Ex. 1 ("Gunther Dep.") at 55:13-56:6, Dkt. No. 56; Declaration of Carla Leake ("Leake Decl.") ¶ 2, Dkt. No 58.  Thompson denies directing Donahue to promote Gunther.  Declaration of Larry Thompson ("Thompson Decl.") ¶ 7, Dkt. No. 45-10.

A few months after accepting the interim Account Sales Manager position, in October or November of 2006, Gunther became a full Account Sales Manager.  Gunther Decl. ¶ 5.  Gunther held this position until January 2007 when he was informed that due to a company-wide Account Sales Manager force reduction and his short tenure in the position, he could not continue in that role.  Gunther Dep. at 61:8-19, Dkt. No. 56; Gunther Decl. ¶ 6.

Gunther then was placed in an Office Solution Specialist ("OSS") position, which he

---

[2] The following Statement of Facts assumes all inferences in Plaintiff's favor.

[3] At some point, Xerox renamed Sales Representatives "Solution Sales Executives."  Gunther Decl. ¶ 2.  For the sake of clarity, the Court uses the "Sales Representative" designation throughout this Order.

United States District Court
Northern District of California

1    considered a demotion.  Gunther Decl. ¶ 7.  While Gunther was an OSS, the Account Sales

2    Manager position re-opened at least twice.  *Id.*  Each time, that position was given to a white

3    employee.  *Id.*

4         Gunther had been an OSS for approximately three years when, in January of 2010, Xerox

5    combined the position with the "Color Mono Sales Executive" ("CMSE") position.  Gunther Decl.

6    ¶ 8; Gunther Dep. at 75:9-21, Dkt. No. 56.  Gunther believes that he was better qualified for the

7    combined OSS/CMSE role than Julia Thomas, the white employee who was promoted to that

8    position, because he had a longer tenure with Xerox (Gunther Dep. at 112:6-13, Dkt. No. 56), he

9    knew the product line (*id.*), and his sales numbers "far exceeded" Thomas' in 2007 and 2008 and

10   were similar to her numbers in 2009 (Gunther Decl. ¶¶ 8, 9).  Nonetheless, Gunther was not

11   promoted to the OSS/CMSE position because, according to Brian Conville, Gunther's manager at

12   the time, Thomas had a "lot of experience with" the CMSE product line as compared to Gunther,

13   and Conville had "challenges around communication" with Gunther.  Riles Decl., Ex. 2 ("Conville

14   Dep.") at 43:4-12, Dkt. No. 56.  These factors led Conville, who is white, to believe that Thomas

15   "would be more effective [than Gunther] at communicating with the team internally," and would

16   "have a smaller learning curve to pick up the office knowledge."  *Id.*

17        Having not been selected for the OSS/CMSE position, Gunther was next moved to a sales

18   "bench" position.  Gunther Decl. ¶ 9.  Gunther viewed this position negatively because bench

19   Sales Representatives did not have the opportunity to exceed their base salaries with commission,

20   and it was difficult to move from the bench position to other positions.  *Id.* at ¶ 10; Gunther Dep.

21   at 77:7-9, 77:14-78:4, Dkt. No. 56.  Additionally, Gunther asserts that his bench position stunted

22   his career advancement at Xerox.  Gunther Decl. ¶ 10.  In the bench position, Gunther was paid on

23   a 100% salary basis rather than under the 80%/20% salary/commission split that applied to other

24   sales positions.  Gunther Dep. at 77:7-9, Dkt. No. 56; Declaration of Aaron Hunt ("Hunt Decl.") ¶

25   15, Dkt. No. 45-3.  Gunther spent much of 2010 providing support to Thomas, making OSS sales

26   while Thomas focused on the more lucrative CMSE sales, and Thomas received all of the

27   commissions for these sales.  Gunther Decl. ¶¶ 8, 9.  During his time on the bench, Gunther

28   commanded the highest salary on Conville's sales team.  Declaration of Brian Conville ("Conville

United States District Court
Northern District of California

4

United States District Court
Northern District of California

Decl.") ¶ 31, Dkt. No. 45-5; Hunt Decl. ¶ 20; Gunther Dep. at 77:10-13, Dkt. No 56.

Gunther had been a bench Sales Representative for about a year when the opportunity arose to take over a territory from a departing Sales Representative (who was white) at the end of 2010. Gunther Decl. ¶ 11. Several large accounts, including McAfee, Apple, and Lockheed Martin, were in this territory. *Id.* ¶ 12; Gunther Dep. 244:18-21, Dkt. No 56. By January 2011, when Gunther was assigned to the new territory, the McAfee, Apple, and Lockheed Martin accounts had been removed. *Id.* In configuring the territory for Gunther, Conville testified that he removed the Lockheed Martin and Apple accounts because he had "concerns . . . around [Gunther's] communication style." Conville Dep. at 62:21-63:14, 63:22-24, Dkt. No 56. Gunther contends that he had years of experience with each of these accounts, and had not received any complaints from the customers regarding his interactions with them. Gunther Decl. ¶ 12. The Lockheed Martin and Apple accounts were given to a white employee, Fred Ikpatchki. Conville Decl. ¶¶ 17, 23; Conville Dep. at 63:15-21, Dkt. No. 56.

Conville asserts that he added a number of other accounts to Gunther's territory to compensate for the removal of the large accounts. Conville Dep. at 70:6-71:9, Dkt. No. 56. Gunther believes that these additions did not adequately balance his account, or give him a fair chance to make his sales quotas, because these "very small accounts, [involving] individual printers/copiers here and there," were not comparable to the removed large key accounts. Gunther Decl. ¶¶ 12, 13. Gunther also contends that at least 49 of the accounts assigned to his territory were "known cancels." *Id.*; Gunther Dep. 31:9-14; 179:13-180:5, Dkt. No. 56. "Known cancels" are accounts that were at the end of their contracts with Xerox and were not planning to renew or upgrade them. Gunther Decl. ¶ 13. Gunther contends that because of these changes, the composition of his territory negatively impacted his ability to sell and reach his revenue goals. *Id.*; *see* Compendium of Gunther Deposition Exhibits ("Compendium"), Ex. 226, Dkt. No. 46-1. In short, it seemed to Gunther that the territory was "designed to fail and drain commissionable revenue." Compendium, Ex. 226.

In his new Sales Representative position and territory, Gunther had difficulty meeting Xerox's expectations. He achieved approximately 21% of his first quarter goals for 2011.

5

United States District Court
Northern District of California

1   Declaration of Kerry McInerney Freeman ("Freeman Decl."), Ex. A ("Gunther Dep.") at 187:17-

2   188:11, Dkt. No. 45-1; Compendium, Ex. 210.  In response, on April 20, 2011 Conville wrote

3   Gunther a "letter of concern," a precursor to Gunther being placed on Xerox's probation or

4   Performance Improvement Plan ("PIP").  *Id*.  A month later, after concluding that Gunther's sales

5   performance was not improving according to expectations, Conville issued Gunther a "formal

6   warning" for the period of June to July 31, 2011.  Compendium, Ex. 211.  The formal warning

7   indicated that Gunther was not performing satisfactorily and said that if he did not "achieve a

8   satisfactory performance level" by August 1, 2011 he could be placed on formal probation.  *Id*.  It

9   is undisputed that a "formal warning" is the first stage of Xerox's PIP.  Conville continued to meet

10  with Gunther to discuss his performance, and moved Gunther to the probation phase of the PIP

11  process on August 5, 2011.  Conville Decl. ¶¶ 6-7; Compendium, Exs. 218-219.  Conville gave

12  Gunther another probation feedback memorandum indicating that he made 30% of his goals for

13  the first half of 2011.  Compendium, Ex. 219.  Gunther does not dispute these performance

14  figures.  Gunther Dep. at 216:10-23; 217:12-16, Dkt. No. 45-1.  Almost two months later,

15  Conville e-mailed Gunther another probation feedback memorandum indicating that Gunther's

16  performance was still unsatisfactory, and stating that he could be terminated on or before October

17  5, 2011 unless he improved.  Compendium, Ex. 221.  On November 18, 2011, Gunther was

18  terminated.  Gunther Decl. ¶ 17.

19        Shortly after his termination, Gunther filed a complaint with the Department of Fair

20  Employment and Housing ("DFEH") detailing the alleged racial discrimination he suffered at

21  Xerox.  *Id.*; Compendium, Ex. 242.  On January 23, 2013, DFEH issued its right-to-sue notice for

22  the allegations Gunther raised in his complaint.  Compendium, Ex. 246.  Gunther then filed the

23  instant action.

24  **IV.    LEGAL ANAYLSIS**

25        **A.    Summary Judgment Standard**

26        Under Federal Rule of Civil Procedure 56(a), "the court shall grant summary judgment if

27  the movant shows that there is no genuine dispute as to any material fact and the movant is

28  entitled to judgment as a matter of law."  Only genuine disputes over material facts will preclude

summary judgment; "factual disputes that are irrelevant or unnecessary will not be counted."

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Material facts are those that may

affect the outcome of the case.  A dispute as to a material fact is "genuine" if the evidence is such

that "a reasonable jury could return a verdict for the nonmoving party." *Id.*  "[I]n ruling on a

motion for summary judgment, the judge must view the evidence presented through the prism of

the substantive evidentiary burden." *Id.* at 254.  The question is "whether a jury could reasonably

find either that the [moving party] proved his case by the quality and quantity of evidence required

by the governing law or that he did not." *Id.*  "[A]ll justifiable inferences must be drawn in [the

nonmovant's] favor."  *United Steelworkers of Am. v. Phelps Dodge Corp*., 865 F.2d 1539, 1542

(9th Cir. 1989) (en banc) (citation omitted).  This is true where the underlying facts are undisputed

as well as where they are in controversy.  *Eastman Kodak Co. v. Image Technical Services, Inc*.,

504 U.S. 541 (1992); *McSherry v. City of Long Beach*, 584 F.3d 1129, 1135 (9th Cir. 2009).

The moving party must inform the district court of the basis for its motion and identify

those portions of the pleadings, depositions, interrogatory answers, admissions and affidavits, if

any, that it contends demonstrate the absence of a genuine issue of material fact.  *Celotex Corp. v.*

*Catrett*, 477 U.S. 317, 323 (1986).  A party opposing a motion for summary judgment "may not

rest upon the mere allegations or denials of [that] party's pleading, but . . . must set forth specific

facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e); *see also Liberty Lobby*,

477 U.S. at 250.  The opposing party need not show the issue will be resolved conclusively in its

favor.  *Liberty Lobby*, 577 U.S. at 248-49.  All that is necessary is submission of sufficient

evidence to create a material factual dispute, thereby requiring a jury or judge to resolve the

parties' differing versions at trial.  *Id.*

The Ninth Circuit recently emphasized that it has "held in several cases that it should not

take much for a plaintiff in a discrimination case to overcome a summary judgment motion."

*Nigro v. Sears, Roebuck and Co*., 784 F.3d 495, 499 (9th Cir. 2015) (collecting cases and

reversing grant of summary judgment for employer in FEHA disability discrimination case).  The

Ninth Circuit explained that "[t]his is because the ultimate question is one that can only be

resolved through a searching inquiry —one that is appropriately conducted by a factfinder, upon a

1  full record." *Id.* (citation omitted).  In addition, in order to rebut an employer's showing of

2  nondiscriminatory reasons at the pretext stage, a plaintiff opposing summary judgment "need

3  produce very little evidence of discriminatory motive to raise a genuine issue of material fact."

4  *Godwin v. Hunt Wesson, Inc.* 150 F.3d 1217, 1220 (9th Cir. 1998) (reversing grant of summary

5  judgment for employer in FEHA sex discrimination case).

6  **B.    Unlawful Race Discrimination (First Cause of Action)**

7  Gunther contends that Xerox racially discriminated against him by: (1) holding him to

8  different performance standards than his white peers in being considered for promotions; (2)

9  assigning him to a sales territory that did not permit him to succeed; (3) placing him in a bench

10  sales position due to his race; and (4) terminating his employment on account of his race.  *See*

11  Opp. at 1.

12  **1.    Release of Claims in *Warren v. Xerox* settlement**

13  As a preliminary matter, Xerox contends that any of Gunther's allegations of racial

14  discrimination that predate September of 2008 are barred by his participation in the class action

15  settlement of the *Warren v. Xerox* case.  Mot. at 16, n. 4.  Gunther agrees that he has released any

16  discrimination claims covered in the *Warren* settlement.  Opp. at 14, n. 1.  Therefore, the Court

17  will restrict its analysis to Gunther's post-September 2008 racial discrimination claims.

18  **2.    Several of Gunther's FEHA Claims Are Time-Barred**

19  California Government Code Section 12960 requires an employee bringing a FEHA claim

20  to file an administrative complaint with the DFEH within one year of the discriminatory conduct

21  alleged.  Cal. Gov. Code § 12960(d).  Therefore, any claims based on allegedly discriminatory acts

22  that occurred more than one year prior to the filing of an administrative complaint with the DFEH

23  are time-barred.  *Morgan v. Regents of Univ. of Cal.*, 88 Cal. App. 4th 52, 63 (2000).  However, a

24  plaintiff may bring a claim based on conduct that occurred more than one year before the DFEH

25  filing if that conduct was part of a continuing violation.

26  Under the continuing violations doctrine, an employer is liable for actions that take place

27  outside of the limitations period if they are sufficiently linked to unlawful conduct within the

28  limitations period.  *Richards v. CH2M Hill, Inc.,* 26 Cal.4th 798, 812 (2001).  A continuing

United States District Court
Northern District of California

8

violation exists where: (1) plaintiff has alleged a number of discriminatory actions at the hands of his or her employer, some of which are time-barred and some of which are not; (2) the otherwise time-barred discriminatory actions complained of are sufficiently similar in kind to those that are timely; (3) the actions have occurred with sufficient frequency; and (4) the actions or employment decisions have not achieved a "degree of permanence" such that the employee would be on notice that further efforts at conciliation with the employer would be futile. *Id.* at 802.

Because Gunther filed his DFEH complaint on February 7, 2012, Gunther Decl. ¶ 17; Compendium, Ex. 246, his allegations based on discriminatory acts prior to February 7, 2011 are time-barred under § 12960(d) unless they were part of a continuing violation. Gunther cursorily asserts that "[a]ll of Defendant's discriminatory actions were part of a continuing violation." Opp. at 12-14. Xerox responds that those claims regarding Xerox's failure to promote and compensate him cannot constitute a "continuing violation" because they achieved a degree of permanence as soon as someone else was selected for the positions in question. Reply at 10.

### a.    Gunther's Pre-February 7, 2011 Failure to Promote Allegations

A denial of a promotion is a decision that is "discrete and permanent when made." *Maridon v. Comcast Cable Commc'ns Mgmt., LLC,* No. C-12-2109 EMC, 2013 WL 1786592, at *11, 13 (N.D. Cal. Apr. 25, 2013). In assessing whether acts outside of the statutory period achieved "the degree of permanence which should trigger an employee's awareness of and duty to assert his . . . rights," the Court looks to the employee's knowledge of the discriminatory basis for the acts. *Thompson v. C & H Sugar Co.,* No. 12-CV-00391 NC, 2014 WL 1266804, at *4 (N.D. Cal. Mar. 24, 2014) (internal citations and quotation marks omitted). The employee's knowledge of discrimination is "critical" in determining whether a particular cause of action is time barred because "the permanence factor is premised on the equitable notion that the statute of limitations should not begin to run until a reasonable person would be aware that his or her rights have been violated." *Id.* (quoting *Morgan*, 88 Cal. App. 4th at 65).

All of Gunther's failure to promote claims addressed in his DFEH complaint refer to incidents that occurred prior to 2010. Gunther Dep. at 55:13-56:6, Dkt. No. 56; Gunther Decl. ¶¶ 7-8. By Gunther's own admission, as early as 2007 he knew the facts underlying his claim that

Xerox's decisions not to promote him were the result of racial discrimination.  In 2007, before he was promoted to Account Sales Manager, Gunther "could not understand" why he hadn't been promoted earlier, and believed that he would not have been promoted were it not for a Senior Vice President's intervention with Gunther's supervisor.  Gunther Dep. 55:13-56:6, Dkt. No. 56; Compendium, Ex. 237 at 2; Gunther Decl. ¶¶ 4-5.  Additionally, by 2007 Gunther was a class member in the *Warren v. Xerox* case, a lawsuit brought on behalf of Xerox's African-American employees alleging racial discrimination in many of the same areas at issue in Gunther's instant claims.  For these reasons, the Court finds that Gunther's discrimination complaints based on Xerox's failures to promote him achieved "permanence" prior to February 7, 2011, and cannot be part of a continuing violation.

### b.    Gunther's Pre-February 7, 2011 Compensation Allegations

Xerox also contends that Gunther's pre-February 7, 2011 complaints regarding compensation he believes he was owed, but did not receive, while assigned to the bench are time-barred.  Mot. at 16.  The Court agrees.  Gunther contends that in early 2010, while assigned to the bench, he made sales for which he did not receive any commission or credit.  Gunther Decl. ¶ 16; Compendium Ex. 237; Gunther Dep. at 83:1-21, Dkt. No. 45-1.  This complaint is directly related to his placement on the bench, since Xerox contends, and Gunther does not dispute, that no salesperson assigned to the bench received commissions.  *Id.* at 83:1-21, 110:23-111:1.  Much like Gunther's failure to promote claims, his compensation claims related to the bench assignment achieved permanence when he was placed in that position.  As with his promotions-based claims, Gunther immediately suspected the decision to place him on the bench after he was not selected for the combined OSS/CSME position was motivated by racial discrimination.  *See Compendium*, Ex. 245 at ¶ 2.  The time for Gunther to raise discrimination complaints related to his bench assignment was, at the latest, in January 2011 when he appears to have received his last paycheck from his bench position.  Gunther Decl. ¶ 12 (indicating that Gunther became a Sales Representative with a territory assignment in January of 2011).  He chose not to do so.  Gunther cannot now revive any claim based on his bench position and compensation structure that he did not timely raise with the DFEH within a year of January 2010.

1    For the foregoing reasons, the Court finds that all of Gunther's pre-February 7, 2011

2    discrimination claims are time barred under Section 12960.

3         **3.    The Remainder of Gunther's FEHA Claims Survive Summary
              Judgment**

4         Gunther also raises FEHA claims alleging that Xerox acted improperly when it reorganized

5    his sales territory and terminated him in 2011.  Xerox does not dispute that these claims are timely

6    pled, since the incidents alleged occurred within one year before Gunther filed his February 7,

7    2012 DFEH complaint.  *See* Mot. at 15-16; Reply at 8-10. Therefore, the Court must next consider

8    whether Gunther has presented sufficient evidence to raise a genuine issue of material fact as to

9    these claims under FEHA.

10        Race-based employment discrimination is unlawful under FEHA.  *See* Cal. Gov. Code §

11   12940(a)-(d).  "Because state and federal employment discrimination laws are similar, California

12   courts look to federal precedent when interpreting FEHA."  *Guz v. Bechtel Nat'l, Inc.*, 24 Cal.4th

13   317, 354 (2000).  "In particular, California courts use the familiar *McDonnell Douglas* burden-

14   shifting test when analyzing disparate treatment claims under FEHA." *Earl v. Nielsen Media*

15   *Research, Inc.,* 658 F.3d 1108, 1112 (9th Cir. 2011) (internal citations omitted).  Under this

16   framework, generally the plaintiff must first establish a prima facie case of discrimination; then

17   the burden shifts to the employer to show a "legitimate, nondiscriminatory reason" for the adverse

18   employment action; and finally the burden shifts back to the plaintiff to prove that the employer's

19   asserted reasons for the action are pretextual.  *Hanson v. Lucky Stores Inc.*, 74 Cal. App. 4th 215,

20   224 (1999).

21        In the context of a summary judgment motion in an employment discrimination action,

22   "the burden is reversed . . . because the defendant who seeks summary judgment bears the initial

23   burden."  *Dep't of Fair Employment & Hous. v. Lucent Technologies, Inc.*, 642 F.3d 728, 745

24   (9th Cir. 2011) (interpreting FEHA) (internal quotation marks and citations omitted);  *Hanson*, 74

25   Cal. App. 4th at 224.   That is, the defendant bears the initial burden to "show either that (1)

26   plaintiff [can] not establish one of the elements of the FEHA claim or (2) there [is] a legitimate,

27   nondiscriminatory reason for its actions."  *Lucent*, 642 F.3d at 745 (internal citations and quotation

28

United States District Court
Northern District of California

United States District Court
Northern District of California

1  marks omitted).   Therefore, in order to survive summary judgment, the plaintiff must

2  "demonstrate either . . . that the defendant's showing [is] in fact insufficient or . . . that there [is] a

3  triable issue of material fact to the defendant's showing."  *Id.* at 746 (quoting *Hanson*, 74 Cal.

4  App. 4th at 225).

5         Xerox argues both that (1) Gunther cannot establish each of the elements of a FEHA claim;

6  and (2) it had legitimate, nondiscriminatory reasons for terminating him.

### a.  Gunther Has Met His Prima Facie Burden of Establishing the Elements of His FEHA Claim

8         In order to establish a prima facie case of discrimination under FEHA, Plaintiff must show

9  that:  "(1) [he] belongs to a protected class, (2) [he] was performing according to [his] employer's

10  legitimate expectations, (3) [he] suffered an adverse employment action, and (4) other employees

11  with qualifications similar to [his] own were treated more favorably."  *Godwin* 150 F.3d at 1220.

12  The degree of proof required to establish a prima facie showing on summary judgment is

13  "minimal."  *Id.*  It is undisputed that Gunther belongs to a protected class and suffered an adverse

14  employment action.  He has at least raised a factual dispute as to whether other employees with

15  similar qualifications were treated more favorably at Xerox.  Xerox contends that Gunther cannot

16  show that he was "performing to his employer's legitimate expectations."  Mot. at 17.

17         Gunther's evidence on this point satisfies his "minimal" prima facie burden.  During his

18  first nine years at Xerox, he received various accolades for his sales performance.  Gunther Decl. ¶

19  3.  He was promoted to account sales manager in 2006 and contends that he finished at over 94%

20  of his sales plan goals.  *Id.* at ¶¶ 4, 6.  As an OSS, he alleges, and Xerox does not dispute, that he

21  exceeded his sales goals by over 248% within the first nine months in the position.  *Id.* at ¶ 7.

22  While on the bench in 2010, and later in 2011 when he moved into a Sales Representative

23  territory, Gunther had the highest base salary on Conville's team.  Conville Decl. ¶ 31; Hunt Decl.

24  ¶ 20; Gunther Dep. at 77:10-13, Dkt. No. 56.  In addition, Gunther has presented evidence that

25  when he was assigned to a new sales territory, his final position prior to his termination, the

26  decline in his sales performance could be attributed to the unfair composition of his assigned

27  territory.   Compendium, Exs. 222, 226, 237; Conville Dep. at 62:21-63:14, 63:22-24, Dkt. No 56;

28

Gunther Decl. ¶¶ 12 and 13; Gunther Dep. 31:1-14, 179:13-180:5, 244:18-23, Dkt. No. 56.

Moreover, the record shows that if Gunther had been credited with a particular sale during this

time, he would have been performing at or above his sales expectations.  Gunther Decl. ¶ 16;

Gunther Dep. at 188:12-14, 200:14-201:1, 448:1-17, Dkt. No. 45-1; Conville Decl. ¶ 30

(acknowledging that Gunther did not receive credit for the sale in question); Compendium, Ex.

234.  In light of this evidence, the Court finds that Xerox has not satisfied its burden on summary

judgment of demonstrating that Gunther cannot make a prima facie showing as to each of the

elements of his FEHA claim.

### b.  Xerox Has Articulated Legitimate Non-Discriminatory Reasons for Gunther's Termination

Xerox argues that Gunther's "poor performance" was a legitimate, nondiscriminatory

reason for his firing, pointing to the following undisputed facts:  (1) in the first quarter of 2011

(which ended at the end of April), Gunther sold only 21% of his quarterly plan (Gunther Dep. at

187:8-188:11, Dkt. No. 45-1; Compendium, Ex. 210); (2) by May 27, 2011, Gunther had achieved

only 21.1% of his year-to-date quota for 2011 (Gunther Dep. at 188:19-189:11, Dkt. No. 45-1;

Compendium, Ex. 211); (3) Gunther's performance caused him to be placed on Xerox's PIP

(probation) program (Compendium, Ex. 211); (4) by August 5, 2011, Gunther still had achieved

only 20% of his first half quota and was therefore moved to the probation phase of the PIP process

(Gunther Dep. 216:7-23, Dkt. No. 45-1; Conville Decl. ¶ 7; Declaration of Julie Hogan at ¶ 10;

Compendium, Ex. 219); (5) by October 2011, Gunther had met 30.2% of his year-to-date sales

quota and had not written any new orders in the months of August or September (Conville Decl.

¶¶ 9-11; Freeman Decl., Ex. B ("Conville Dep.") at 155:21-156:8, Dkt. No. 45-1; Compendium,

Ex. 367); and (6) Gunther only wrote three orders in all of 2011 (Gunther Dep. at 320:13-17, Dkt.

No. 45-1).  Poor job performance is a legitimate nondiscriminatory reason for terminating an

employee, *Aragon v. Republic Silver State Disposal Inc.*, 292 F.3d 654, 660-61 (9th Cir. 2002),

and Xerox has adequately articulated its basis for reaching that conclusion here.

### c. Gunther Has Presented Sufficient Evidence to Allow a Reasonable Trier of Fact to Conclude That Xerox's Stated Reasons for Terminating Him Were Pretextual

Because Xerox has articulated facially nondiscriminatory reasons for terminating Gunther, the burden shifts back to Plaintiff to show that Xerox's asserted reasons amount to pretext. *Hanson*, 74 Cal. App. 4th at 224.

A plaintiff asserting a discrimination claim can "demonstrate pretext in either of two ways: (1) directly, by showing that unlawful discrimination more likely than not motivated the employer; or (2) indirectly, by showing that the employer's proffered explanation is unworthy of credence because it is internally inconsistent or otherwise not believable." *Earl v. Nielsen Media Research, Inc.*, 658 F.3d 1108, 1112-13 (9th Cir. 2011) (assessing age and disability discrimination claims under FEHA). "When the plaintiff has some direct evidence but also must rely on circumstantial evidence to show pretext, [courts] treat direct and circumstantial evidence alike and . . . consider both types of evidence cumulatively." *France v. Johnson*, 795 F.3d 1170, 1175 (9th Cir. 2015); *see also Reid v. Google*, 50 Cal.4th 512, 539-40, 545 (2010) (explaining that "a review of all the evidence is essential" to the court's assessment of whether plaintiff has met his burden of showing pretext at summary judgment stage, and finding that court "properly considered evidence of alleged discriminatory comments made by decisionmakers and coworkers along with all other evidence in the record"). Although the Ninth Circuit has stated that "the circumstantial evidence relied on by the plaintiff must be 'specific' and 'substantial,'" "there is some question whether that distinction for circumstantial evidence is valid after the Supreme Court's *Costa* decision which placed direct and circumstantial evidence on an equal footing." *France v. Johnson*, 795 F.3d 1170, 1175 (9th Cir. 2015) (*discussing Godwin*, 150 F.3d at 1222). In any event, the Ninth Circuit has consistently held that "a plaintiff's burden to raise a triable issue of pretext is hardly an onerous one." *Earl*, 658 F.3d at 1113 (internal quotation marks omitted).

Gunther has met his burden of raising a triable issue of fact regarding whether Xerox's proffered justifications for terminating him were pretextual. Significantly, Gunther points to more than one instance in which his manager, Brian Conville, used racial epithets and other derogatory language. Opp. at 7, 15. Gunther contends that while he was working under Conville, Conville

14

referred to a Mexican-American employee on numerous occasions as "my little nigger."  Gunther

Decl. ¶ 14; Gunther Dep. at 415:13-21, Dkt. No. 56.  Both Conville and the employee in question

deny that these statements were made.  Conville Decl. ¶ 29; Declaration of Armando Lopez

("Lopez Decl.") ¶ 6.  But Conville admits that while socializing with coworkers he repeated the

phrase "nigga please," which he contends was a "joke."  Conville Dep. at 78:16-79:18, Dkt. No.

56.  Additionally, Gunther contends that Conville "had a habit of making negative comments at

the office" about African-American sports figures, and television shows and music associated with

African-Americans, but did not make such comments about other groups.  Gunther Decl. ¶ 14;

Gunther Dep. at 422:16-423:1, Dkt. No. 56.

Conville's alleged comments are highly probative evidence from which a jury could infer

discriminatory intent.  Gunther presents evidence that Conville, his direct supervisor, used "an

egregious and bigoted insult, one that constitutes strong evidence of discriminatory animus."

*Cordova v. State Farm Ins. Co.*, 124 F.3d 1145, 1149 (9th Cir. 1997).  To the extent Xerox

believes it can explain away Conville's use of what it gently characterizes as a "race-based term,"

Mot. at 21, a trial jury will have to determine the credibility of that explanation.  *See Reid*, 50

Cal.4th at 541 (explaining that "[d]etermining the weight of discriminatory or ambiguous remarks

is a role reserved for the jury," and emphasizing that "the task of disambiguating ambiguous

utterances is for trial, not for summary judgment").

Gunther also presents circumstantial evidence in support of his pretext showing.  Viewing

the evidence in the light most favorable to Gunther, as the Court must at this stage, the record

reflects that (1) Gunther made the President's Club and Par Club on four occasions, and made

248% of his sales goals in the first nine months of being an OSS (Gunther Decl. ¶¶  3-7); (2)

Gunther at one time received the highest salary on Conville's team (Conville Decl. ¶ 31; Hunt

Decl. ¶ 20; Gunther Dep. at 77:10-13, Dkt. No. 56); (3) Gunther was passed over for promotions

for which he and others believed he was qualified (Gunther Dep. at 55:13-56:21, 112:6-13, Dkt.

No. 56); (4) Conville removed large key accounts from Gunther's sales territory (Gunther Decl. ¶

12; Conville Dep. at 62:21-63:14, 63:22-24, Dkt. No. 56); (5) Conville gave the removed accounts

to a white employee (Conville Decl. ¶ 23; Conville Dep. at 63:15-21, Dkt. No. 56); and (6)

1   Conville removed these accounts from Gunther based on concerns about his "communication

2   style" (Conville Dep. at 62:21-63:1, Dkt. No. 56).

3       Assessing these facts as a whole, along with the evidence regarding Conville's slurs, the

4   Court finds that Gunther has met his "hardly onerous" burden of showing that triable issues of fact

5   exist here.  *See Reid*, 50 Cal.4th at 545 (derogatory remarks and other evidence, including

6   evidence that plaintiff was demoted to a nonviable territory before his termination and was fired

7   because he was not a "cultural fit," precluded summary judgment).[4]  Xerox no doubt plans to

8   mount a vigorous defense at trial, but it will be for the jury to decide which side's story it finds

9   more credible.  Accordingly, Xerox's motion for summary judgment as to Gunther's post-

10  February 7, 2011 FEHA claims is DENIED.

11      **C.    Wrongful Termination Against Public Policy (Fourth Cause of Action)**

12          In addition to his FEHA claims, Gunther asserts a common-law tort claim for wrongful

13  termination against public policy based on Defendant's alleged violations of FEHA.  FAC ¶¶ 81-

14  88.  Under California law, an employer cannot terminate an employee for a purpose that

15  contravenes public policy.  *Foley v. Interactive Data Corp.,* 47 Cal. 3d 654, 667 (1988).   In order

16  to support a claim for wrongful termination against public policy, Plaintiff must show that the

17

18  ---
    [4] Xerox asserts that "it is **only** when a stray remark like Conville's is '**combined with other
19  evidence of pretext**' that it **may** become part of '**an ensemble that is sufficient to defeat
    summary judgment.**"  Reply at 13 (copious emphasis in original).  *Reid* did not create such a
20  rule.  The cited passage from *Reid* says that while "[a] stray remark alone may not create a triable
    issue of age discrimination," such a remark "may create an ensemble that *is* sufficient to defeat
21  summary judgment" when combined with other evidence.  50 Cal.4th at 541-42 (emphasis in
    original).  Nothing in *Reid* stands for the premise that use of explicit racial epithets like those
22  Conville allegedly used in this case could *never*, no matter how odious, constitute sufficient
    evidence by themselves to create an issue of fact regarding pretext.  *Reid's* statement that such
23  remarks *may not* suffice to defeat summary judgment standing alone is very different from
    Defendant's blanket claim that they *cannot ever* do so.  This is especially plain in light of the
24  overriding thrust of *Reid*, which *rejected* a defendant's argument that so-called "stray remarks"
    should be disregarded as a matter of law at the summary judgment stage, and criticized this
25  reading of the doctrine as "allow[ing] the trial court to remove [the task of determining the weight
    of discriminatory remarks] from the jury."  *Id.* at 540-41.  In any event, because the totality of the
26  evidence here meets Gunther's burden for the reasons noted above, the Court need not engage
    further with Defendant's "if and only if" argument, or decide whether Conville's statements are
27  properly characterized as "stray remarks" (an assertion  that gives the Court significant pause).
    Finally, for the future, Xerox and its counsel are advised that the excessive and distracting use of
28  bold type in Defendant's papers significantly detracted from, rather than enhanced, the persuasive
    force of Xerox's arguments.

1    allegedly violated policy is "(1) delineated in either constitutional or statutory provisions; (2)

2    'public' in the sense that it 'inures to the benefit of the public' rather than serving merely the

3    interests of the individual; (3) well established at the time of the discharge; and (4) substantial and

4    fundamental." *Stevenson v. Superior Court*, 16 Cal.4th 880, 897 (1997).  The public policy

5    against racial discrimination as reflected in FEHA is sufficient to form the basis of a common-law

6    wrongful termination claim.  *City of Moorpark v. Superior Court*, 18 Cal.4th 1143, 1161 (1998);

7    *Kap-Cheong v. Korea Express, USA, Inc.*, No. C 02-4041 CRB, 2003 WL 946103, at *5 (N.D.

8    Cal. Feb. 12, 2003) ("Violations of FEHA and/or the California Constitution based on

9    race/national origin discrimination are issues of fundamental state public policy and fall under this

10   category.").  Unlike Gunther's FEHA claims, his wrongful termination claim is not subject to an

11   administrative exhaustion requirement.  *Stevenson*, 16 Cal.4th at 890 ("[A] plaintiff need not

12   exhaust administrative remedies under FEHA before asserting a common law claim.").  However,

13   to sustain his wrongful termination claim, Gunther must show that he meets the substantive

14   requirements of FEHA.  *City of Moorpark*, 18 Cal.4th at 1159.

15        For the same reasons discussed above, the Court concludes that Gunther has presented

16   enough evidence to raise a triable issue of material fact as to whether Xerox violated FEHA in

17   terminating Gunther.  As a result, Xerox's motion for summary judgment as to Gunther's

18   wrongful termination claim is hereby DENIED.

19        **D.    Unlawful Retaliation (Second Cause of Action)**

20        Gunther concedes that "his retaliation claim is not as viable as his other claims" and does

21   not oppose the dismissal of that claim.  Opp. at 17.  The Court therefore GRANTS summary

22   judgment on Gunther's Second Cause of Action for unlawful retaliation.

23        **E.    Declaratory Relief (Third Cause of Action)**

24        Gunther's Third Cause of Action seeks a declaration pursuant to California Code of Civil

25   Procedure § 1060 that his race and engagement in protected activities were a substantial

26   motivating factor for Xerox's decision to terminate his employment.  FAC ¶ 77.  As an initial

27   matter, the Court finds that the federal Declaratory Judgment Act, rather than the California

28

United States District Court
Northern District of California

17

statute, governs in this case.[5]

"To fall within the Act's ambit, the case of actual controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests," and it must be "real and substantial and admi[t] of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (internal citations and quotation marks omitted).   The Court finds that Plaintiff's claim for declaratory relief meets this standard. Further, for the reasons discussed above, Gunther has put forth sufficient evidence to raise a disputed issue of material fact as to Defendant's motives that, if resolved in his favor at trial, could justify the requested declaration.  Whether this cause of action is "redundant" can be addressed at trial if necessary.  For these reasons, Defendant's motion for summary judgment on Gunther's Third Cause of Action is DENIED.

### F.   Punitive Damages

Under California law, a plaintiff is entitled to punitive damages where he can show by "clear and convincing evidence[] that the defendant has been guilty of oppression, fraud, or malice."  Cal. Civ. Code § 3294.    Where the defendant is a corporation, the evidence must demonstrate that an officer, director or managing agent committed, authorized or ratified an act of malice, oppression or fraud.  *Id.*; *see also White v. Ultramar, Inc.,* 21 Cal.4th 563, 572 (1999).  A "managing agent" is defined as an employee "who exercise[s] substantial independent authority and judgment over decisions that ultimately determine corporate policy."  *White*, 21 Cal.4th at 573.  "The scope of a corporate employee's discretion and authority" is "a question of fact for decision on a case-by-case basis."  *Id.*  However, typically "supervisory employees" are not considered managing agents under § 3294 unless they exercise "substantial discretion" in their decision-making capability.  *Id.*

---

[5] Generally, federal courts sitting in diversity apply federal procedural rules.  *See In re Adobe Sys., Inc. Privacy Litig.,* 66 F. Supp. 3d 1197, 1219 (N.D. Cal. 2014) (collecting cases and holding, based on the procedural nature of the Declaratory Judgment Act, that where declaratory relief is requested in federal court the federal statute applies).  Accordingly, the Court will analyze Gunther's third cause of action under the federal standard.

1    Depending on how the evidence comes in at trial, a reasonable trier of fact could conclude

2    that Conville exercised substantial discretion in supervising Plaintiff, directing his career

3    advancement at Xerox, and building and altering his sales territories.  Conville Dep. at 62:21-

4    63:14, 63:22-24, Dkt. No. 56; Gunther Decl. ¶¶ 11-13.  In addition, the motivation of Gunther's

5    managers in deciding to terminate him is an inherently fact-intensive inquiry to be resolved by a

6    jury, and Xerox has not presented any argument that would entitle it to summary judgment on the

7    punitive damages claims as a matter of law.

8         The Court finds it would be premature to dismiss Gunther's request for punitive damages,

9    and therefore DENIES summary judgment on this claim.

10   **V.    CONCLUSION**

11        Having considered the evidence in the light most favorable to Plaintiff, the Court DENIES

12   Defendant's motion for summary judgment as to Gunther on his First, Third, and Fourth Causes of

13   Action and on his prayer for punitive damages.  The Court GRANTS Defendant's motion for

14   summary judgment on Gunther's Second Cause of Action for Unlawful Retaliation.

15

16        **IT IS SO ORDERED.**

17   Dated:  10/2/2015

18                                                    _____

19                                                    HAYWOOD S. GILLIAM, JR.
                                                      United States District Judge

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California